**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | | |
|---|---|---|
| KRISTENE ROMER, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 08-221-LMB |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE | ) | **MEMORANDUM DECISION** |
| COMMISSIONER OF SOCIAL SECURITY | ) | **AND ORDER** |
| ADMINISTRATION, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Currently pending before the Court is Kristene Romer's ("Petitioner") Petition for

Review.   (Docket No. 1).  Petitioner seeks review to set aside the final determination of the

Commissioner of Social Security denying Petitioner's claim for Disability Insurance Benefits

under Title II of the Social Security Act.  This action is brought pursuant to 42 U.S.C. § 405(g).

Having carefully reviewed the record and being otherwise fully advised, the Court enters

the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

Petitioner filed for disability insurance benefits under Title II of the Social Security Act

(the "Act").  On April 27, 2005, Petitioner alleged a disability resulting from rheumatoid arthritis

and osteoarthritis, with an onset date of March 2, 2005.   (AR 15).  The Commissioner initially

denied Petitioner's application on October 3, 2005, and again after reconsideration on December

7, 2005.  *Id.*  On December 16, 2005, Petitioner filed a timely request for a hearing before an

**MEMORANDUM DECISION AND ORDER - 1 -**

Administrative Law Judge ("ALJ").   (AR 37).  ALJ Peter J. Valentino held a hearing on August

14, 2007, where Petitioner was represented by attorney Jared Ellis.  *Id*.  Vocational expert, Polly

A. Peterson, Ph.D., also appeared and testified at the hearing.  *Id*.

On September 12, 2007, the ALJ denied Petitioner's claim, finding that she was not

disabled during the period under consideration, from March 2, 2005 through September 12,

2007.  (AR 23).

On September 25, 2007, Petitioner requested the Social Security Administration's

Appeals Council review the ALJ's determination.  On April 6, 2008, the Appeals Council denied

review, making the ALJ's determination the final determination of the Commissioner of Social

Security.   (AR 2–4).

Having exhausted administrative remedies, Petitioner timely filed the instant action.

*Petition for Review* (Docket No. 1).  Petitioner requests that this Court reverse the

Commissioner's determination and enter judgment granting Petitioner's claim for Disability

Insurance Benefits. In the  alternative, Petitioner requests this matter be remanded for an ALJ

hearing *de novo*.  *Id.* at 4.

## II. BACKGROUND

At the time of the hearing before the ALJ, Petitioner was fifty-four years old and had

fifteen years of education, including cosmetology school and nearly two years of studying

accounting and business.  (AR 260–61).  Petitioner's most relevant job experience is working as

an office manager for nearly 17 years, first at Idaho Tool and Equipment and later at Broadmore

Country Club.  (AR 78, 262).  Petitioner alleges that, due to her disability, she is unable to

perform any of her past work or productive work in the national economy.   (AR 269).

**MEMORANDUM DECISION AND ORDER - 2 -**

As a result of Petitioner's rheumatoid arthritis and osteoarthritis, the ALJ determined that Petitioner had a severe combination of impairments; however, he also concluded that Petitioner's combination of impairments did not meet or medically equal one of the listed impairments in Section 14.09 of the Regulations.   (AR 17).   Accordingly, the ALJ determined that Petitioner  is not disabled under the Act and denied her application for disability benefits.  (AR 18, 22).

### III. STANDARD OF REVIEW

If the Commissioner's decision is supported by substantial evidence and based upon proper legal standards, it will be upheld.  42 U.S.C. § 405(g) (2000); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  Findings of fact by the ALJ are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981).

Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  This standard requires "more than a scintilla," but "less than a preponderance," *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). In other words, if there is substantial evidence to support the ALJ's factual determinations, they must be upheld, even in the face of conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the

**MEMORANDUM DECISION AND ORDER - 3 -**

conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.  The ALJ

is responsible for determining credibility, resolving conflicts in medical testimony, *Allen v.

Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v.

Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984), and drawing inferences logically flowing from

the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  When the evidence is

susceptible to more than one rational interpretation in a disability proceeding, the reviewing

court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*,

44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

    With respect to questions of law, the ALJ's decision must be based on proper legal

standards and will only be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's

construction of the Act is entitled to deference if it has a reasonable basis in law.  *See id.*

However, reviewing courts "will not rubber-stamp an administrative decision that is inconsistent

with the statutory mandate or that frustrates the congressional purpose underlying the statute."

*Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).  Reviewing courts must bear in mind that

the Act is remedial and should be construed liberally and "not so as to withhold benefits in

marginal cases."  *Id*. at 1095 (citations omitted).

## IV. DISCUSSION

    When evaluating evidence, the ALJ must follow a five-step sequential process in

determining whether a person is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520,

416.920.  Petitioner bears the burden of proof as to steps one through four, then the burden shifts

to the Commissioner at step five.  *Tackett v. Apfel*, 180 F.3d 1094, 1098  (9th Cir. 1999).

**MEMORANDUM DECISION AND ORDER - 4 -**

The issues presented in this appeal are as follows: (1) whether the ALJ erred by failing to find that Petitioner's impairment or combination of impairments meet or equal the listing for Inflammatory Arthritis 14.09 at step three of the sequential process; (2) whether the ALJ erred in rejecting Petitioner's subjective pain testimony without providing specific, clear, and convincing reasons for rejecting the evidence; (3) whether the ALJ erred at step five in finding there are jobs available in the national economy that Petitioner can perform; and (4) whether reversal and remand with an order for immediate payment of benefits is appropriate. *Plaintiff's Brief in Support of Petition for Review*, p. 2 (Docket No. 15) [hereinafter "Petitioner's Brief"].

**A.      Sequential Process**

The first step of the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If so, Petitioner is not disabled and benefits are denied.  20 C.F.R. § 404.1520(b).  In this case, the ALJ concluded that Petitioner has not performed substantial gainful activity since March 2, 2005.  (AR 17).

The second step requires the ALJ to determine whether the claimant's impairment or combination of impairments are severe.  20 C.F.R. § 404.1520(a)(4)(ii).  If the answer is in the negative, disability benefits are denied.  *Id*. at (c).  Here, the ALJ found that Petitioner has a severe combination of two impairments: rheumatoid arthritis and osteoarthritis.  (AR 17).

At the third step, the ALJ must determine whether the claimant's impairments meet or equal a listed impairment under the 20 C.F.R. Pt. 404, Subpt. P, App. 1.  If so, the claimant is disabled and entitled to disability insurance benefits.  20 C.F.R. § 404.1520(d).  If the claimant's impairment does not meet or equal an impairment listed in the Regulations, then the evaluation

**MEMORANDUM DECISION AND ORDER - 5 -**

proceeds to step four.  *Id*.  In the instant action, the ALJ concluded that Petitioner did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.   (AR 18).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform any past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If so, the claimant is "not disabled" and thus not entitled to disability insurance benefits.  *See* 20 C.F.R. § 404.1520(e).  "If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).  The ALJ concluded that Petitioner retains "the residual functional capacity to perform a sedentary level of work activity."   (AR 18).  The ALJ concluded that Petitioner is unable to perform any past relevant work. Citing the vocational expert's testimony, the ALJ found that Petitioner is not able to perform past relevant work because "such work is precluded by the claimant's exertional and non-exertional limitations." (AR 21).  Accordingly, the claim could not be resolved at step four, and the ALJ's evaluation proceeded to the fifth and final step of the process.  *See* 20 C.F.R. § 404.1520(e).

When the claim reaches step five, the ALJ considers if the claimant is able to do any other work.  20 C.F.R. § 404.1520(f)(1).  At the fifth step, the burden shifts to the ALJ.  *Id.*  If the ALJ finds that the claimant cannot work, then the claimant is "disabled" and entitled to disability insurance benefits.  *Id*.  If the ALJ determines that the claimant can work, the ALJ must then establish that there are a significant number of jobs in the national economy that claimant can perform in his or her condition.  *Id*.  If the ALJ cannot meet this burden, then the claimant is

**MEMORANDUM DECISION AND ORDER - 6 -**

"disabled" and entitled to disability benefits.  *Lounsbury*, 468 F.3d at 1114.  The ALJ can meet this burden two ways.  *Id.*  First, the ALJ can solicit the testimony of a vocational expert; second, the ALJ can refer to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2.  *Id.*

In this case, the ALJ, through the testimony of a vocational expert, determined that Petitioner is able to perform the requirements of an information clerk, "which is a semi-skilled, sedentary level of work activity."  (AR 22).  Accordingly, the ALJ found Petitioner not disabled as defined in the Act.  (AR 23).

**B.**    **Analysis**

Petitioner challenges the Commissioner's final determination on several grounds, claiming that the ALJ committed reversible error at steps three and five of the sequential process.  *Petitioner's Brief*, pp. 7–14 (Docket No. 15).  First, Petitioner claims that the ALJ erred at step three by improperly rejecting her treating physician's opinion.  *Id.* at pp. 8–10.  In the same regard, Petitioner claims that substantial evidence supports a finding that she meets the Listing requirements of Inflammatory Arthritis 14.09 ("14.09 Listing Requirements").  *Id.* at pp. 9–10.  Second, Petitioner claims the ALJ committed reversible error in discounting Petitioner's subjective testimony regarding her inability to work at the sedentary level without clear and convincing reasons for doing so.  *Id.* at pp. 10–12.  Third, Petitioner claims that the ALJ committed reversible error in his step five determination that Petitioner can perform another job in the national economy.  *Id.* at pp. 13–14.  She argues that the ALJ improperly concluded that Petitioner could perform semi-skilled work without satisfying the requirement that the ALJ list what skills Petitioner possessed that were directly transferable to the job suggested by the vocational expert.  *Id.*

**MEMORANDUM DECISION AND ORDER - 7 -**

Respondent claims that the ALJ applied the correct legal standards and that his determination is supported by substantial evidence in the record.  *Respondent's Brief*, p. 5 (Docket No. 16).  Respondent refutes all of Petitioner's allegations.  As to the step three determination, Respondent argues that Petitioner did not meet her burden in proving that she met the 14.09 Listing Requirements, that the ALJ properly weighed all of the evidence, including Petitioner's treating physician's opinion, and that the ALJ appropriately and properly rejected part of her treating physician's opinion.  *Id.* at pp. 8–11.  Respondent argues that the ALJ gave several specific reasons for discrediting Petitioner's testimony.  *Id*. at pp. 5–7.  As to the step five determination, Respondent argues that the ALJ correctly found that Petitioner could perform other work because the vocational expert testified that Petitioner's skills are more advanced than the information clerk position requires.  *Id*. at p. 11.

Petitioner alleges that the ALJ committed legal error at step five of the sequential process when he found that Petitioner's medical records do not show impairments that have produced disabling pain or other limitations for any period of 12 or more continuous months.  *Id*. at p. 12. She claims that this finding contradicts the ALJ's finding at step two of the sequential process. There, the ALJ found that Petitioner's arthritic condition has, in fact, lasted more than 12 months and "cause[d] more than a slight limitation of the claimant's physical or mental ability to do basic work activities."  *Id*. (citing AR 17).  At step five, the ALJ determined that the Petitioner's impairments are not likely to produce disabling pain or limitations for more than 12 months. (AR 17–18).

Petitioner misconstrues the ALJ's findings at steps two and five by apparently assuming that the ALJ made these determinations with regard to the same issue.  In fact, the ALJ's

**MEMORANDUM DECISION AND ORDER - 8 -**

discussion regarding Petitioner's limitations and their duration were regarding Petitioner's functionality, not Petitioner's eligibility for benefits. This is made clear by the ALJ's conclusion that Petitioner has a severe combination of impairments and is thus eligible for benefits at step two. At step five, the ALJ concluded that those impairments are not likely to cause disabling pain or limitations that will last for 12 months or more.[1] Accordingly, the determination of the Commissioner will not be overruled on this ground.

### 1.     Step Three: 14.09 Listing Requirements.

At step three of the sequential process, the ALJ was required to determine whether Petitioner's impairments meet or equal an impairment listed in the Regulations. Petitioner argues that the ALJ's determination at this step was in error because she meets the 14.09 Listing Requirements contained in 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 14.09. *Petitioner's Brief*, pp. 7–10 (Docket No. 15). Petitioner argues that the ALJ improperly ignored the treating physician's medical opinion that Petitioner met the 14.09 Listing Requirements, and that there is substantial evidence to support her physician's opinion that she met the requirements. *Id.*

Respondent argues that Petitioner failed to prove all of the requisite elements of the 14.09 Listing Requirements. *Respondent's Brief*, pp. 8–11 (Docket No. 16). As to Petitioner's contention that the ALJ improperly rejected Dr. Loveless's opinion, Respondent argues the ALJ did consider Dr. Loveless's opinion, and to the extent that it was rejected, the ALJ gave specific reasons for doing so. *Id.* at pp. 7–8. Respondent also argues that there is substantial evidence to support the ALJ's determination that Petitioner does not meet the 14.09 Listing Requirements.

---

[1] *See* section 3, *infra*, for a discussion of the ALJ's determination at step five of the sequential process.

**MEMORANDUM DECISION AND ORDER - 9 -**

### a.   Dr. Loveless's Opinion

At the outset, it is important to note that it is undisputed that Dr. Loveless is Petitioner's treating physician.  The specific medical record at issue in this case ("the checklist") is one prepared by Dr. Loveless on June 4, 2007.  (AR 199).   The checklist is part of a 43-page medical record.   (*See* "Exhibit 11F," AR 197–239).  The document is entitled "14.09 Inflammatory Arthritis" and is in the form of a checklist.  (AR 199).  The instructions at the top of the page instruct the doctor to indicate which of the items on the checklist apply to the patient. *Id*.  Dr. Loveless checked that Petitioner had inflammatory arthritis; history of joint pain, swelling, and tenderness; deformity in two or more major joints; and an inability to ambulate effectively.  *Id*.  Dr. Loveless also checked that signs on current physical examination of joint inflammation were "absent" and that there was "insufficient evidence" of whether Petitioner had an inability to perform fine and gross movements effectively.  *Id*.

A treating physician's medical opinion is given controlling weight, so long as it is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  If the treating physician's medical opinion is uncontradicted, the ALJ may reject the opinion only for "clear and convincing reasons supported by substantial evidence in the record."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).  On the other hand, if the treating physician's opinion is contradicted by the opinion of a non-treating doctor, the ALJ may reject the treating physician's opinion only for "specific and legitimate reasons supported by substantial evidence in the record."  *Id*.  The ALJ does not satisfy his burden by merely offering his conclusions.  Rather, in rejecting a treating physician's opinion, the ALJ

**MEMORANDUM DECISION AND ORDER - 10 -**

must explain why his own interpretations are correct, as opposed to the doctor's. *Orn*, 495 F.3d at 631. The ALJ can achieve this by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretations, and explaining why his interpretation is correct instead of the doctor's. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). A lack of objective medical findings, treatment notes, and rationale to support a treating physician's opinion are all sufficient reasons for rejecting an opinion. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ does not need to discuss every piece of evidence when he develops the record and interprets the evidence. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). For example, in *Howard*, the court found that the ALJ's failure to discuss a specific report was not error when the ALJ had discussed other pages from the medical provider's records and the ALJ relied on other providers' reports. 341 F.3d at 1012.

Like the *Howard* case, here, the ALJ did not ignore Dr. Loveless's opinion. In fact, the ALJ recited Dr. Loveless's notes on Petitioner's condition, symptoms, joint examination, and response to treatment, specifically citing to Exhibit 11F. (AR 19). The ALJ goes on to cite Dr. Loveless's progress notes dated April 12, 2006 and May 31, 2007, again citing to Exhibit 11F. (AR 20). Significantly, the ALJ recited Dr. Loveless's opinion that was contained in the questionnaire Dr. Loveless completed on June 4, 2007, the same date that the record at issue was prepared. *Id*.

The ALJ discussed specific findings from Dr. Loveless's records and he discussed another physician's records. (AR 19–20). The record makes clear that the ALJ considered Dr. Loveless's medical records and made a factual determination that no physician has opined that

**MEMORANDUM DECISION AND ORDER - 11 -**

Petitioner meets or exceeds the 14.09 Listing Requirements.  In other words, the ALJ did not

ignore Dr. Loveless's opinion.  The ALJ does not have to cite every piece of evidence when

making his factual determinations.  *Howard*, 341 F.3d at 1012.  Accordingly, the ALJ did not err

by failing to specifically recite the information contained in the checklist, and the final

determination will not be reversed for this reason.

### b.      Substantial Evidence in Support of the ALJ's Step Three Determination

Petitioner asserts that there is substantial evidence to support her claim that her

impairments meet the Listing Requirements, arguing that her pain medications, physical

limitations, and Dr. Loveless's checklist are sufficient to support a finding that she meets the

Listing requirements. *Petitioner's Brief*, pp. 9–10.

Respondent argues that the ALJ properly found that Petitioner does not meet the Listing

Requirements because Petitioner failed to meet her burden of establishing a disability under the

Listings.  *Respondent's Brief*, p. 9.   Further, Respondent argues that the ALJ properly

considered the medical evidence and that the medical records provide substantial evidence to

support the ALJ's determination at step three.  *Id*. at pp. 7–11.

Petitioner has the burden of proof at step three to show that she meets all criteria of a

Listing and is therefore *per se* disabled.  *Tackett*, 180 F.3d at 1098.  In determining that

Petitioner has not met all of the criteria of a Listing, the ALJ is not, as a matter of law, required

to state why a claimant failed to satisfy every different section of a Listing.  *Gonzalez*, 914 F.2d

at 120. Rather, the ALJ need only adequately state the "foundations on which the ultimate

conclusions are based."  *Id*.  Requiring more unduly burdens the social security disability

process.  *Id*. (*citing Stephens v. Heckler*, 766 F.2d 284, 297 (7th Cir. 1985)).

**MEMORANDUM DECISION AND ORDER - 12 -**

Under subpart A of the 14.09 Listing Requirements, a claimant meets the requirements

for inflammatory arthritis if she has persistent inflammation or persistent deformity of:

1.  One or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively (as defined in 14.00C6); or
2.  One or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively (as defined in 14.00C7).

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 14.09(A).

Under the Listing, the "inability to ambulate effectively" is defined as:

an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning [] to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(l).  The ALJ shall find the claimant able to

ambulate effectively when:

[An] individual[ is] capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.  The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(2).

Under the Listing, the "inability to perform fine and gross movements effectively" means

"an extreme loss of function of both upper extremities."  20 C.F.R. Pt. 404, Subpt. P, App. 1 §

**MEMORANDUM DECISION AND ORDER - 13 -**

1.00(B)(2)(c).  The impairment must interfere "very seriously" with Petitioner's ability to "independently initiate, sustain, or complete activities."  *Id.*  Examples of an inability to perform gross and fine movements include the inability to prepare simple meals and feed oneself, to take care of personal hygiene, and to file papers in a cabinet at waist level. *Id.*

Though Dr. Loveless's checklist suggests that Petitioner meets the 14.09 Listing Requirements, the ALJ cited substantial evidence to the contrary.  The ALJ cited evidence from Dr. Loveless's records that shows that Petitioner had only a "smidgen" of synovitis anywhere and her hips, knees, ankles, and feet "moved well."  (AR 19).  Additionally, on May 31, 2005, Dr. Loveless noted that Petitioner's "back and hips are better" and her "joints are doing well." (AR 203–204).  The notation for the joint examination also indicates that Petitioner had "mild tenderness across the metatarsal row only."  *Id.*  Additionally, Dr. Loveless notes that Petitioner was responding well to the Humira treatment, that her disease was "adequately controlled," and that she was "keeping active."  (AR 203, 238).

Dr. Loveless also checked off that Petitioner had an inability to ambulate effectively. (AR 199).  The ALJ, though, made factual findings based on Dr. Loveless's February 1, 2005 record, which indicates that Petitioner was doing well overall and was keeping active.  (AR 19). In the Residual Functional Capacity Questionnaire, Dr. Loveless indicated that Petitioner was able to walk for thirty minutes at a time every two hours.  (AR 197).  Petitioner also testified that until eight months prior to the hearing, she would hike once a week.  (AR 269–70).

Dr. Loveless's checklist indicates that there is "insufficient evidence" as to whether Petitioner was able to perform fine and gross movements effectively.  However, the ALJ cites to evidence that suggests otherwise.  An examination dated April 12, 2006 indicates that Petitioner

**MEMORANDUM DECISION AND ORDER - 14 -**

felt she was better overall and that her extremities were "unremarkable" and the four joint examination revealed no synovitis.  (AR 20).  Dr. Loveless's Residual Functional Capacity Questionnaire indicates that Petitioner is capable of reaching, handling, and fingering, as well as lifting and carrying up to ten pounds of weight.  *Id*.  Furthermore, Petitioner testified that she is self-sufficient in terms of personal grooming and dressing herself, doing laundry, dishes, dusting, and preparing simple meals for herself and husband.  (AR 273–74).

Finally, on August 23, 2005, Dr. Rupp noted that Petitioner experienced "occasional slight swelling and discomfort" in her hips, knees, and foot.  (AR 19)*.*  Dr. Rupp also opined that Petitioner was "not significantly compromised" by her arthritis, either had a "remarkable response" to the Humira treatment or has a mild form of rheumatoid arthritis, and that Petitioner should not be limited by her arthritis.  (AR 20).

The cumulative effect of the evidence the ALJ cites as to the condition of Petitioner's major joints and as to Petitioner's ability to ambulate effectively and perform fine and gross movements effectively is sufficient to support the ALJ's finding that Petitioner does not meet the 14.09 Listing Requirements.  Accordingly, the ALJ's determination as to step three is affirmed.

### 2.    **Petitioner's Credibility**

Petitioner argues that the ALJ failed to provide clear and convincing reasons for finding Petitioner's testimony not credible.  *Petitioner's Brief*, p. 12.  She also argues that the ALJ improperly took Petitioner's statements that she was "doing well" out of context and failed to consider the other pains noted in the physicians' records.  *Id*. at 11–12.

**MEMORANDUM DECISION AND ORDER - 15 -**

Respondent argues that the ALJ identified reasons for rejecting Petitioner's pain testimony, citing the eight factors discussed in the ALJ's opinion. *Respondent's Brief*, pp. 6–7. Respondent argues that these reasons are sufficient to affirm the ALJ's credibility determination.

When an ALJ discredits a claimant's testimony, the ALJ must give clear and convincing reasons for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996). Further, the ALJ must specify what testimony is not credible and identify the evidence that contradicts the claimant's testimony. *Id*. The following considerations are relevant to the ALJ's determination as to whether a claimant's pain testimony is credible: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow the prescribed course of treatment; and (3) the claimant's daily activities. *Id*.

Because the ALJ is in the best position to determine Petitioner's credibility, his cedibility determination is given great weight. *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990). Where, as here, the ALJ's findings to support his rejection of Petitioner's credibility are sufficiently specific to allow the Court to conclude that the ALJ's decision is based on permissible grounds and not to arbitrarily discredit the Petitioner's testimony, the Court will not disturb the ALJ's credibility determination. *See Bunell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). Further, the Court "may not engage in second-guessing" if the ALJ's finding is supported by substantial evidence. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

In the instant action, the ALJ properly discredited Petitioner's pain testimony because he have clear and convincing reasons for doing so. First, the ALJ specifically described the

**MEMORANDUM DECISION AND ORDER - 16 -**

Petitioner's testimony that she cannot perform at the sedentary level of work as "not totally

credible." (AR 20). After identifying the testimony that is not credible, the ALJ listed eight

"clear and convincing reasons" for finding Petitioner's testimony not credible, as follows:

> **First**, on February 1, 2005, the claimant told Dr. Loveless that overall she was doing well.
> **Second**, Dr. Loveless reported during the February 1, 2005 (sic), that examination of the claimant's extremities revealed no cyanosis, clubbing, or edema; and the joint examination revealed just a trace of synovitis.
> **Third,** during the consultative evaluation on August 23, 2005, by Dr. Rupp, it was noted that the claimant had a good medication response and she was continuing to do well and was currently only noting discomfort in her right shoulder.
> **Fourth,** Dr. Rupp noted that the claimant had a full range of motion and laboratory results revealed a negative rheumatoid factor, a sedimentation rate of 0, and a negative ANA.
> **Fifth**, examination of the claimant on April 12, 2006, revealed that her extremities were unremarkable, four limb joint examination revealed no synovitis, and the neurological examination was nonfocal.
> **Sixth,** progress notes, including April 12, 2006 and May 31, 2007, by Dr. Loveless, indicated that the claimant reported that overall she felt that she was better.
> **Seventh**, when discussing the claimant's impairments, no physician, neither any of the claimants (sic) treating physicians or a State Agency physician ever opined that listing level limitations were ever met or equaled.
> **Eighth,** the objective evidence of the claimant's medical record does not establish impairments likely to produce disabling pain or other limitations as alleged for any period of 12 or more continuous months.[2]

(AR 20–21). Ultimately, the ALJ found that the objective medical evidence and

Petitioner's acknowledged activities are consistent with his finding that she can perform

activities at the sedentary level and are "inconsistent with the inability to do any work

activity." (AR 21).

Though the evidence can be interpreted differently, there is substantial evidence

that supports the ALJ's credibility decision. The ALJ cites to medical records that span a

---

[2]*See* section B, *supra*, for discussion.

**MEMORANDUM DECISION AND ORDER - 17 -**

period of over two years, in which the Petitioner asserted she was "doing well," feeling that she was getting better, and that she was responding well to her treatment.  (AR 20–21).  Furthermore, joint examinations performed over a year apart both show that Petitioner's joints only have a trace of synovitis, and an examination a year later shows there was only "mild tenderness across the metatarsal row."  (AR 162, 203–205). Additionally, Petitioner testified that she dusts, cleans dishes, does laundry, prepares meals, and is self-sufficient in terms of personal grooming.  (AR 273–74).

The ALJ properly discredited Petitioner's testimony and the ALJ's decision is supported by substantial evidence on the record. Accordingly, the Court affirms the ALJ's determination as to this issue.

### 3.        Step Five: Other Jobs Available in the National Economy

Petitioner argues that the ALJ erred in determining that there are jobs available in the economy that Petitioner can perform.  Specifically, Petitioner argues that the vocational expert did not indicate which skills were transferable from her past relevant work as an office manager to the information clerk position that the expert suggested. *Petitioner's Brief*, p. 13 (Docket No. 15).

Respondent argues that the vocational expert testified that Petitioner's skills are more advanced than those required of an information clerk position, thus the ALJ's determination that Petitioner can perform a significant number of available jobs should be affirmed.  *Respondent's Brief*, p. 11 (Docket No. 16).

In this Circuit, when the ALJ finds that a claimant has transferable skills, the ALJ must identify those work skills and the specific occupations to which the work skills are

**MEMORANDUM DECISION AND ORDER - 18 -**

transferable.  SSR 82-41; *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219

(9th Cir. 2009) (adopting the Second Circuit's approach, requiring specific findings on

transferable skills even when the ALJ relies on the testimony of a vocational expert).  In

*Bray*, the ALJ heard testimony from a vocational expert who made blanket statements

that the claimant had skills that could be transferred to clerk positions.  554 F.3d at 1223.

However, the vocational expert did not identify which skills were transferable.

Additionally, the ALJ did not identify which skills the claimant possessed or which skills

were transferable.  *Id*.  The court remanded the case to the Commissioner to make

additional findings as to what specific skills the petitioner possessed that were

transferable to the clerk position.  *Id*. at 1226.  Thus, the ALJ is in error if he finds that a

claimant has transferable skills but fails to identify the specific skills that are transferable

to a job available in the national economy.

In this case, the ALJ failed to identify the specific skills that are transferrable to

other sedentary jobs available in the national economy.  The vocational expert, Dr.

Peterson, discussed the transferability of Petitioner's skills at the hearing, but did not

articulate which skills Petitioner had acquired that are transferable to other sedentary

jobs, such as the position of information clerk.  (AR 284–287).  Instead, Dr. Peterson

asserted that Petitioner's skills are "more advanced" than the information clerk job

requires.  (AR 286).  Moreover, the ALJ failed to even find that Petitioner is more skilled

than the information clerk position requires; the ALJ simply found that she has

transferable skills that would allow Petitioner to perform the requirements of an

information clerk, which is a semi-skilled, sedentary level of work activity.  (AR 22).

**MEMORANDUM DECISION AND ORDER - 19 -**

It is unclear what skills are transferable from Petitioner's past relevant work to the position of information clerk because the ALJ failed to identify any skills in his opinion. Moreover, Dr. Peterson's testimony does not illuminate what skills Petitioner has acquired from her past relevant work that can be applied to other available jobs in this economy.  (AR 285–287).  Guided by the Ninth Circuit's interpretation of SSR 82-41, which requires the ALJ to specifically identify the claimant's transferable skills and the occupations to which those skills are transferable, the Court finds that the ALJ erred in his failure to identify which of Petitioner's skills are transferable to other positions in the national economy at step five.  The determination at step five is dispositive of Petitioner's claim for disability benefits.  Accordingly, this case is remanded to the Commissioner to make additional findings as to what specific skills Petitioner possesses that are transferable to available positions in this economy.

## C.   Conclusion

With all of the foregoing in mind, this case is remanded to the Commissioner to require the ALJ to specifically identify the skills that Petitioner possesses that are transferable to jobs available in this national economy and the occupations to which those skills are transferable.

///

///

///

///

///

**MEMORANDUM DECISION AND ORDER - 20 -**

## V. ORDER

For the foregoing reasons, the Commissioner's determination is AFFIRMED IN

PART and REVERSED IN PART, and this action is REMANDED for further

proceedings as provided in the foregoing Memorandum Decision and Order.



DATED:  **April 13, 2009**.

Honorable Larry M. Boyle
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 21 -**